**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                               :
FAHS ROLSTON PAVING CORP.,     :
                               :   CIVIL ACTION NO. 03-4593 (MLC)
        Plaintiff,             :
                               :   MEMORANDUM OPINION
        v.                     :
                               :
PENNINGTON PROPERTIES          :
DEVELOPMENT CORP., INC.,       :
et al.,                        :
                               :
        Defendants.            :
                               :
```

**COOPER, District Judge**

This is an appeal by plaintiff, Fahs Rolston Paving Corp., from a March 20, 2006 order of the Magistrate Judge denying its motion for reconsideration of so much of the Magistrate Judge's February 3, 2006 order denying "plaintiff's informal motion to compel discovery based upon waiver of the attorney-client privilege due to dual representation, the crime/fraud exception, or societal concerns." (Dkt. entry nos. 60 & 48.)  For the reasons stated herein, the Court will affirm the orders of the Magistrate Judge on the issues raised in this appeal.

<u>BACKGROUND</u>

The parties are familiar with the background of this action. (<u>See</u> 5-15-06 Mem. Op. & Ord.; 9-28-04 Mem. Op. & Ord.; 6-10-02 Report of Special Master Keefe ("Keefe Report").)  This matter arises out of an agreement between plaintiff and defendants Pennington Properties Development Corp., Inc. ("Pennington"),

Westrum Development Co. ("Westrum"), Peter Blicher and Mark
Ellenbogen concerning the purchase of property in Lawrence
Township, New Jersey ("Township") to be developed into an
assisted living facility.  (9-28-04 Mem. Op., at 2; Dkt. entry
no. 1.)  Defendants Stark & Stark and Daniel Haggerty, Esq.
(hereinafter "Stark & Stark"), represented both plaintiff and
Pennington for the purpose of their joint land use application
before the Lawrence Township Planning Board ("the Board").
(Keefe Report, at 4.)

Pennington and Westrum met with plaintiff, then known as
Court Street Companies ("Court Street"), on June 2, 1999, to
discuss the terms and conditions of a land sale agreement between
them.  (Id.)  In that meeting, Pennington and plaintiff discussed
both the sale by Pennington of approximately 11 acres of a 36-
acre site to for development into a senior citizen housing and
assisted living facility, and the necessity of obtaining land use
approvals from the Board.  (Id. at 3.)  Stark & Stark represented
Pennington at this meeting while plaintiff was represented by
separate counsel.  (Id.)  At the meeting, Stark & Stark told both
parties that they were willing and able to represent both
Pennington and plaintiff as to their land-use applications before
the Board.  (Id.)

Plaintiff and Pennington signed an agreement on June 23,
1999 ("Agreement"), for the sale of the land, known as the "Evans

2

Tract," for $1.2 million.  (<u>Id.</u>)  Under the Agreement, the closing was made contingent upon the parties obtaining the required government approvals and the Board amending zoning requirements allowing the Evans Tract to be used as a "Senior Citizen Residential" district.  (<u>Id.</u>)  According to the Agreement, each party was required to file separate land use applications with the Board within sixty days of the Township amending the Evans Tract's zoning.  (<u>Id.</u>)

The Township amended its land use zoning ordinance relating to the Evans Tract to permit it to be used as a senior citizen residential area on July 20, 1999.  (<u>Id.</u> at 4.)  Plaintiff contends that, soon thereafter, in September of 1999, Court Street and Pennington agreed that instead of filing separate land use applications, Pennington would file a joint application on behalf of both parties.  (<u>Id.</u>)  Plaintiff also claims that the parties agreed that Stark & Stark would represent both parties in the land use joint venture.  (<u>Id.</u>)  Stark & Stark filed the joint land use application in April or May of 2000.  (<u>Id.</u>)

Plaintiff met with Pennington on September 28, 2000.  (<u>Id.</u>)  Pennington contends that during that meeting, plaintiff stated that it could not obtain financing for the development project or fulfill the Agreement.  (<u>Id.</u>)  Plaintiff asserts that it did not renounce its participation in the Agreement and that it intended for the land use joint venture to continue.  (<u>Id.</u>)

3

Pennington sent plaintiff a notice of default on October 3, 2000, alleging that plaintiff breached the Agreement.  (Id. at 5.)  Plaintiff responded by letter dated October 25, 2000, contending that Pennington itself breached the Agreement and requesting that Stark & Stark immediately cease representing Pennington because of its conflict of interest.  (Id.)

## I.   The State Court Action

Pennington and Westrum, represented by Stark & Stark, filed a complaint in New Jersey Superior Court, Mercer County ("State Court"), on or about March 16, 2001, against plaintiff alleging breach of contract.  (Id.)  Plaintiff moved to dismiss Pennington's complaint, compel arbitration, and disqualify Stark & Stark because of an alleged conflict of interest.  (Id.)  The State Court ordered that the issue of disqualification of counsel be decided in arbitration.  (Id. at 6.)  Plaintiff appealed the order insofar as it related to the disqualification issue on August 6, 2001, after having moved, on July 31, 2001, to stay all proceedings pending its appeal.  (Id.)  The State Court granted the motion to stay on September 26, 2001, on the condition that plaintiff submit the disqualification issue to the Special Master.  (Id.)

Plaintiff and Pennington agreed to submit the issue of Stark & Stark's disqualification to Special Master Keefe on October 31, 2001.  (Id.)  Special Master Keefe conducted a hearing on April 8

4

and 9, 2002, and submitted a report to the State Court on June 10, 2002. (Id.) The report recommended that Stark & Stark be disqualified, pursuant to New Jersey Rule of Professional Conduct ("Rule") 1.10, from further representing Pennington in the contract matter. (Id.) In so recommending, Special Master Keefe found that Stark & Stark violated either Rule 1.7 or Rule 1.9 in representing both seller and buyer in the "Land Use Joint Venture" and application process despite the parties' conflicts of interest. (Id. at 7.) The State Court, in an order dated September 16, 2002, adopted Special Master Keefe's findings of fact, conclusions of law, and recommendations. (Id.)

## II.  Proceedings Before The Magistrate Judge

Plaintiff brought an informal motion to compel discovery on the grounds that there is no attorney-client privilege between Pennington and Stark & Stark. (See 2-3-06 Op. on Informal Mot.) Oral argument on that motion as well as others was heard on December 6, 2005.[1]  (Id.)

Plaintiff asserted that any communications between Pennington and Stark & Stark after October 25, 2000, were not protected by the attorney-client privilege and should be

---

[1] Plaintiff failed to provide the Court with a transcript of the December 6, 2005 oral argument. The Court obtained a recording of the proceedings.

discoverable.[2]  (Recording of 12-06-05 Oral Arg.)  Stark & Stark
asserted that (1) the privilege exists, (2) its joint
representation of plaintiff and Pennington was limited to the
joint land use application, and (3) its representation of
plaintiff was terminated via plaintiff's October 25, 2000 letter
to Pennington and Stark & Stark.  (Id.; see dkt. entry no. 64,
Ex. M.)

According to plaintiff, the October 25, 2000 letter did not
terminate Stark & Stark's joint representation of plaintiff, but
rather informed Stark & Stark of the existence of a conflict that
precluded them from further representation of plaintiff and
Pennington individually or jointly.  (2-3-06 Op. on Informal
Mot.)  Plaintiff also argued that attorney-client privilege
between Pennington and Stark & Stark was impossible because
Special Master Keefe disqualified Stark & Stark from representing
Pennington in the state litigation.  (Id.)

Plaintiff also argued that the crime-fraud exception
defeated defendants' claim of attorney-client privilege.  (Id.)
The Magistrate Judge denied this part of the motion without
prejudice on the grounds that plaintiff's accusations as to fraud

---

[2] It is undisputed that Stark & Stark represented both
plaintiff and Pennington for the purpose of their joint land use
application. (2-3-06 Op. on Informal Mot., at 2.)

committed by defendants were premature and too general for the
court to find that the exception applied.  (Id.)[3]

The Magistrate Judge denied plaintiff's motion, finding that
defendants' attorney-client relationship continued after October
25, 2000, and that Pennington did not waive, and no exceptions
apply to, the attorney-client privilege.  (See 2-3-06 Op. on
Informal Mot., at 5-6.)  Plaintiff filed a motion for
reconsideration, which the Magistrate Judge also denied.  (Dkt.
entry no. 60).  Plaintiff now appeals from the Magistrate Judge's
orders insofar as they denied its request to compel discovery
based on the absence of attorney-client privilege between
Pennington and Stark & Stark.  (Dkt. entry no. 61.)

**DISCUSSION**

**I.   District Court Review of Magistrate Judge Decisions**

The district court has authority to review determinations of
a magistrate judge.  See 28 U.S.C. § 636.  A magistrate judge is
accorded wide discretion in addressing non-dispositive motions,
and an exercise of discretion will be reversed only if there is
an abuse of that discretion.  Id.; Miller v. Beneficial Mgmt.
Corp., 844 F.Supp. 990, 997 (D.N.J. 1993).  A district judge may
not reverse, modify, or vacate a magistrate judge's order
addressing a non-dispositive motion unless the order is "clearly

---

[3]  Rather than renew the motion to compel discovery based on
the crime-fraud exception with the Magistrate Judge, plaintiff
has chosen to seek this Court's review of the issue.

erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A);
Fed.R.Civ.P. 72(a); L.Civ.R. 72.1(c)(1); Cipollone v. Liggett
Group, Inc., 785 F.2d 1108, 1113 (3d Cir. 1986). "A finding is
clearly erroneous when although there is evidence to support it,
the reviewing court on the entire evidence is left with the
definite and firm conviction that a mistake has been committed."
Thomas v. Ford Motor Co., 137 F.Supp.2d 575, 579 (D.N.J. 2001)
(internal quotes and cites omitted). Any evidence that was not
presented to the magistrate judge cannot be considered by the
district court when making a factual determination. Id.

## II. Attorney-Client Privilege

Plaintiff argues that the Magistrate Judge erred in finding
that Pennington is not precluded from invoking the attorney-
client privilege after October 25, 2000, because: (1) the crime-
fraud exception applies – Stark & Stark and Pennington committed
a fraud upon the Board when Stark & Stark continued to represent
Pennington in its individual land use application, and on the
State Court when Stark & Stark represented Pennington in its
breach of contract claim against plaintiff, without informing
either tribunal of the alleged conflict of interest; (2) the
joint client exception to the privilege applies because the joint
venture between plaintiff and Pennington was not terminated; and
(3) Special Master Keefe disqualified Stark & Stark from
representing Pennington in the state court litigation and

8

therefore no attorney-client relationship existed and all communications referring to plaintiff are discoverable.  (Pl. Br., at 13, 19, 21.)

**A.   Client-Fraud Exception**

Plaintiff's mere allegations that Pennington and Stark & Stark have committed fraud cannot overcome Pennington's assertion of attorney-client privilege in this case.  The crime-fraud exception assures that the attorney-client privilege does not extend to "communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud." N.J.S.A. § 2A:84A-20(2)(a); N.J.R.Evid. 504.[4]  The party seeking to invoke the crime-fraud exception bears the burden of presenting a prima facie case of fraud or crime in order to overcome the privilege.  Nat'l Utility Serv., Inc., v. Sunshine Biscuits, Inc., 301 N.J.Super. 610, 618 (App. Div. 1997).

New Jersey courts have given the term "fraud" as it applies to the exception an "expansive reading."  Fellerman v. Bradley, 99 N.J. 493, 503 (1985).  "Confederating with clients to allow court and counsel to labor under a misapprehension as to the true state of affairs" is a fraud within the meaning of the crime-fraud exception.  Id. (quotations and citation omitted).

---

[4] The Magistrate Judge correctly noted that because jurisdiction is based on 28 U.S.C. § 1332, New Jersey's state law on attorney-client privilege controls.  See Maertin v. Armstrong World Ind. Inc., 172 F.R.D. 143, 147 (D.N.J. 1997).

Even using a broad definition of the term fraud, plaintiff has not made a prima facie showing that Pennington was committing or intended to commit a fraud, and does not point to any attorney-client communications made in furtherance of the alleged fraud.  Plaintiff only asserts general allegations that Pennington and Stark & Stark committed a fraud because (1) they were both aware of the alleged conflict of interest created by Stark & Stark representing Pennington before the Board and State Court, and (2) both knew that Stark & Stark was without authority to go forward with the land use application.  (Pl. Br., at 14-17.)

Plaintiff provides no evidence showing that Pennington or Stark & Stark caused either the Board or State Court to "labor under a misapprehension as to the true state of affairs." Fellerman, 99 N.J. at 503.  Instead, plaintiff argues that because Stark & Stark and Pennington "failed to disclose . . . that [Stark & Stark's] continued representation of Pennington had been challenged by [plaintiff]," or that Stark & Stark had represented plaintiff in the land use joint venture, they perpetrated a fraud on (1) the Board when they presented Pennington's individual revised land use application without plaintiff's consent, and (2) the State Court when they filed a complaint against plaintiff.

10

Plaintiff's argument that Stark & Stark and Pennington in effect knowingly concealed Stark & Stark's conflict of interest ignores that plaintiff and defendants disagreed about when Stark & Stark's representation of the joint venture ended and when its representation of only Pennington began, as shown by that very issue being litigated here and the State Court.  Pennington and Stark & Stark's failure to disclose their alleged conflict of interest to the Board or State Court does not amount to evidence of fraud, much less a prima facie showing that defendants were engaged in fraud and that communications between them were made in furtherance of that fraud.  Accordingly, so much of the Magistrate Judge's order finding that plaintiff's allegations of fraud were insufficient to overcome the attorney-client privilege will be affirmed.

**B.   The Joint Client Exception and Stark & Stark's disqualification in the state litigation**

Plaintiff argues that the Magistrate Judge's failure to apply the joint client exception to preclude Pennington from asserting attorney-client privilege was contrary to law because the joint venture relationship between plaintiff and Pennington was not terminated.  (Pl. Br., at 20.)  In a related argument, plaintiff also argues that because Special Master Keefe disqualified Stark & Stark from representing Pennington in the state court litigation, no attorney-client relationship existed

and therefore communications between them after October 25, 2000, are discoverable.  (Id. at 21.)

Plaintiff's argument must be examined in the context of not only the joint client exception, but also the law governing the formation and termination of the attorney-client relationship. "It is clear that an attorney must affirmatively accept a professional undertaking before the attorney-client relationship can attach, whether his acceptance be by speech, writing, or inferred from conduct." Procanik by Procanik v. Cillo, 226 N.J.Super. 132, 146 (App. Div. 1988). "While a lawyer must seek client approval to withdraw, the client may discharge the attorney at will." Pellettieri, Rabstein & Altman v. Protopapas, 383 N.J.Super. 142, 152 (App. Div. 2006). "Where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter." N.J.S.A. § 2A:84A-20.

The record supports the Magistrate Judge's conclusion that Stark & Stark and Pennington remained in an attorney-client relationship after October 25, 2000, despite the demise of the joint venture, and that there was no waiver by Pennington of the attorney-client privilege.  In a letter dated October 25, 2000, plaintiff informed Pennington and Stark & Stark:

> Finally, it is obvious that by sending the Notice of
> Default on behalf of Pennington Dan [Haggarty] has made

12

> a choice as to whom he will represent, and, as a
> consequence, we request that he immediately withdraw
> from all representation of all matters involving and/or
> relating to Pennington and Court Street as he has a
> clear conflict of interest.

(Dkt. entry no. 65, Ex. L.)

A fair reading of this excerpt indicates that as of October 25, 2000, plaintiff was aware that Stark & Stark was representing Pennington's interests and not plaintiff's or the joint venture's. Even though plaintiff viewed the notice of default from Pennington as a "nullity," it acknowledged in the letter that Stark & Stark had "made a choice" to represent Pennington rather than the joint venture.

Most importantly for purposes of the joint client exception to the attorney-client privilege, plaintiff indicates in the letter that it did not want Stark & Stark representing it as an individual or as part of the joint venture. That plaintiff also requested that Stark & Stark stop representing Pennington does not change that its letter manifested an intent to terminate whatever attorney-client relationship it perceived itself to have with Stark & Stark.

Pennington, unlike plaintiff, had not terminated its attorney-client relationship with Stark & Stark as of October 25, 2000, and after that date was free to assert its privilege against plaintiff because it was no longer in a joint representation situation. This holds true regardless of Special

13

Master Keefe's determination in 2002 that Stark & Stark was disqualified from representing Pennington in the State Court litigation against plaintiff.  The Court will not equate disqualification in the state litigation due to a conflict, with waiver of the privilege in a separate case, over three years later, where the disqualified party is now a co-defendant.  Thus, the Magistrate Judge properly found that there was an attorney-client relationship between Pennington and Stark & Stark after October 25, 2000, and at no point was that privilege waived by virtue of the parties' dual representation, which was limited to the land use joint venture.

### CONCLUSION

The Court, for the reasons discussed herein, will affirm the Magistrate Judge's orders insofar as appealed from here. The Court will issue an appropriate order.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

14