UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **FAHS ROLSTON PAVING CORP.,** | : | Civil Action No. 03-4593 (MLC) |
| Plaintiff, | : | |
| v. | : | OPINION and ORDER |
| | : | ON INFORMAL MOTION |
| **PENNINGTON PROPERTIES DEVELOPMENT CORP., INC., et al.,** | : | |
| Defendants. | : | |

**BONGIOVANNI, J.**

This matter comes before the Court on an informal motion to compel discovery by Plaintiff, Fahs Rolston Paving Corporation ("Fahs Rolston" or "Plaintiff"). Fahs Rolston contends that Defendants Mark Ellenbogen and Peter Blicher (hereinafter respectively "Ellenbogen" and "Blicher") waived the attorney-client privilege by relying on the advice of counsel during their depositions, and therefore that Fahs Rolston is entitled to discovery on the specifics of that advice. (Fahs Rolston Letter Brief of June 29, 2006 ("Moving Brief") at 1). On July 11, 2006, Defendants Stark & Stark and Daniel Haggerty, Esq., (hereinafter collectively "Stark") filed an opposition letter brief and informal cross motion to compel discovery under the same waiver of attorney-client privilege theory (hereinafter "Stark Opposition Brief"). Defendants Pennington Properties Development Corporation, Inc., Westrum Development Company, Ellenbogen and Blicher (hereinafter collectively "Pennington") filed a letter brief in opposition to Plaintiff's informal motion and in support of Stark's cross-motion on July 13, 2006 (hereinafter "Pennington Opposition Brief"). Fahs Rolston submitted a letter reply brief on July 13, 2006 (hereinafter "Reply Brief"). No oral

argument has been held pursuant to Fed. R. Civ. P. 78.  The Court has reviewed the submissions of the parties and for the foregoing reasons Fahs Rolston's informal motion to compel is **GRANTED** and Stark's informal cross-motion to compel is **DENIED**.

**I.      Background**

The parties are familiar with the background and lengthy history of this matter and therefore it shall not be repeated here at length.  The underlying case revolves around an agreement between Fahs Rolston and Pennington for the purchase and development of a subdivision of real property in Lawrence Township, New Jersey.  Defendants Stark represented both Fahs Rolston and Pennington in this deal.  The agreement subsequently failed.

On September 28, 2000, Messrs. Fahs and Burritt of Fahs Rolston and Blicher and Ellenbogen of Pennington met to discuss the land deal. (Pennington Opposition at 3).  Also present were Daniel Haggerty, Esq., representing Pennington and Marc Citron, Esq., representing Fahs Rolston. (Id.)  Pennington and Stark assert that during the meeting Fahs Rolston stated that it could not obtain financing for the development project.  (September 28, 2004 Opinion of the District Court at 4 [Docket Entry No. 25] (hereinafter "September 28, 2004 Opinion")).  Fahs Rolston contends that it did not relinquish its participation in the project and it had every intent to move forward. (Id. at 4-5).  "Rather, Fahs Rolston claims that [it] merely inquired as to whether Pennington Properties had any contacts with financial institutions that were financing such projects and/or whether [Pennington Properties was] interested in participating in Plaintiff's part of the Project." (Id. at 5 (internal quotations omitted)).

On October 3, 2000, Pennington sent Fahs Rolston a Notice of Default, alleging breach of the land use agreement. (Id.)  Fahs Rolston responded on October 25, 2000, arguing that Pennington

2

breached the contract and requesting that Stark immediately cease representing Pennington because of the existence of a conflict of interest. (Id.)  Soon thereafter litigation commenced and the parties have, on numerous occasion, attempted to pierce the attorney-client privilege.

### *A. Fahs Rolston's Claims*

Fahs Rolston claims that Ellenbogen and Blicher waived the attorney-client privilege by relying upon the advice of counsel during deposition testimony regarding events that occurred during September and October 2000. (Moving Brief at 1).  Ellenbogen's deposition took place on May 31, 2006, and Blicher's commenced on June 1, 2006. (Id. at Ex. A, B). During the depositions, Fahs Rolston's line of questioning was designed to support their contention that "Ellenbogen and Blicher had no basis to declare [Fahs Rolston] in default and that this was conjured up because Defendants had already decided to eliminate [Fahs Rolston's] portion of the Project." (Moving Brief at 3).  When questioned, Ellenbogen and Blicher "both stated that they were not acting willfully, but rather that they relied on advice of counsel." (Id.; see also Blicher Dep. at 103:9-10, 108:5-6, 118:14-15, 120:1-3, 130:6-9; Ellenbogen Dep. at 51:5-6).

### *B. Stark and Pennington's Claims*

Stark argues that Carl Guy (hereinafter "Guy"), a "representative of [Fahs Rolston] placed the advice of counsel at issue as an affirmative defense to [Pennington's] breach of contract claim." (Stark Opposition at 6).  Pennington asserts that "it is clear that plaintiff is hiding behind the directives of Marc Citron who no doubt orchestrated this tortured set of facts to find a vehicle for his client to abandon the contract." (Pennington Opposition at 8).  Guy's deposition took place on February 1, 2006.  (Stark Opposition at Ex. A).  When Guy was questioned about whether Fahs Rolston was able to proceed with the transaction and whether Pennington was advised of this, he

expressed his thoughts on conversations with Fahs Rolston's counsel. (Id. at p. 23-25, 37-38, 53:1-12, 53-56).

Pennington further asserts that the Court should pierce or waive the attorney client privilege to all communications regarding all parties. (Pennington Opposition at 8). The Court also notes that Pennington's opposition brief fails to assert the attorney-client privilege between Pennington and Stark and barely mentions Fahs Rolston's assertions that Ellenbogen and Blicher waived the attorney-client privilege.

**II.   Analysis**

*A.  Choice of Law*

As a preliminary matter, the Court notes that jurisdiction is based on diversity of citizenship. Federal Rule of Evidence 501 and District of New Jersey precedent are clear that New Jersey state rules or privilege apply to diversity actions in the New Jersey federal courts. "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision, thereof shall be determined in accordance with State law." Fed. R. Evid. 501. Examining the privileges in Rule 501, the District Court held, "[I]n cases where a district court is exercising diversity jurisdiction, the law of privilege which controls is that which would be applied by the courts of the state in which it sits." Maertin v. Armstrong World Ind. Inc., 172 F.R.D. 143, 147 (D.N.J. 1997) (citing Samuelson v. Susen, 576 F.2d 546, 549 (3d Cir. 1978); In re Ford Motor Co., 110 F.3d 954, 964-65 (3d Cir. 1997)).

*B.  Attorney Client Privilege and Waiver*

The New Jersey Supreme Court has noted that "the attorney-client privilege can be explained

by a functional rationale -- 'the judicial recognition that the public is well served by sound legal counsel based on full and candid communication between attorneys and their clients.'" <u>Kinsella v. Kinsella</u>, 150 N.J. 276, 298 (1997) (quoting <u>Fellerman v. Bradley</u>, 99 N.J. 493, 502 (1985)).  New Jersey's attorney-client privilege is codified in N.J.S.A. §2A:84A-20 which provides as follows:

> (1) General rule.  Subject to Rule 37 and except as otherwise provided by paragraph 2 of this rule communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (I) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness.  The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative; the privilege may be claimed by the client in person, or if incompetent or deceased, by his guardian or personal representative.  Where a corporation or association is the client having the privilege and it has been dissolved, the privilege may be claimed by its successors, assigns or trustees in dissolution.  <u>N.J.R.E.</u> 504.

It is axiomatic that the attorney-client privilege belongs to the client rather than the attorney.  J.M. Callen and H. David, "Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System," 29 RUTGERS L. REV. 332, 337 (1976). <u>See also</u> <u>George v. Siemens Indus. Automation, Inc.</u>, 182 F.R.D. 134, 138 (D.N.J. 1998).  The client also determines whether a privilege communication may be disclosed, and "has authority to raise or waive the privilege." <u>George</u>, 182 F.R.D. at 138.  Moreover, the burden of establishing the existence of the privilege belongs to the party asserting the privilege. <u>In re Grand Jury</u>, 603 F.2d 469, 474 (3d Cir.1979); <u>Wei v. Bodner</u>, 127 F.R.D. 91, 94 (D.N.J.1989), <u>citing</u> <u>Brock v. Gerace</u>, 110 F.R.D. 58 (D.N.J.1986).

Despite the protection the privilege affords, "the attorney-client privilege is not absolute." Kinsella, 150 N.J. at 300. "Considerations of public policy and concern for proper judicial administration have led the legislature and the courts to fashion limited exceptions to the privilege. These exceptions attempt to limit the privilege to the purposes for which it exists. Fellerman v. Brady, 99 N.J. 493, 502 (1985). In certain situations the attorney-client privilege is "overriden to compel disclosure, even in the absence of an explicit statutory or traditional categorical exception." Kinsella, 150 N.J. at 299. One such situation where the attorney client privilege is waived is when a litigant relies upon the advice of counsel.

Although many other jurisdictions recognize that an assertion of reliance upon the advice of counsel constitutes a waiver of the attorney-client privilege[1], it appears that only one published New Jersey case is directly on point. In In re PSE&G Shareholder Litig., 320 N.J. Super. 112, 115 (Ch. Div. 1998), the court held that the attorney client privilege was waived when the corporate directors relied upon an opinion of counsel when making a corporate decision. During the deposition of directors of PSE&G, counsel for the defendants raised the attorney-client and work-product privileges in response to questions regarding "conversations of counsel with witnesses which related to the investigation conducted by counsel." Id. at 114. The plaintiffs claimed that the deponents' reliance upon the advice of counsel waived any attorney-client privilege. The court agreed and held: "when the report or opinion of counsel is relied upon as a basis for the directors' decision, the

---

[1] See 1 McCormick on Evidence § 93 (6th ed.)(citing Hunt v. Blackburn, 128 U.S. 464, 470-471 (1888); U.S. v. Workman, 138 F.3d 1261 (8th Cir. 1998)); See also Skelton v. Spencer, 98 Idaho 417, 421 (citing Rose v. Crawford, 37 Cal.App. 664, 667, (1918); State Compensation Ins. Fund v. Foulds, 167 Colo. 123 (1968); Kelley v. Cummens, 143 Iowa 148, (1909); Houser v. Frank, 186 Kan. 455 (1960); Jackson v. Swift & Co., 151 So. 816, 818 (La.App. 1934); Leverich v. Leverich, 340 Mich. 133 (1954); Chase v. Chase, 78 R.I. 278 (1951); McClure v. Fall, 42 S.W.2d 821, 824 (Tex.Civ.App. 1931), aff'd 67 S.W.2d 231 (Tex. 1934); Grant v. Harris, 116 Va. 642 (1914)). In fact, in federal question cases, this circuit recognizes this waiver. See U.S. Fire Ins. Co. v. Asbestospray, 182 F.3d 201, 212 (3d Cir. 1999); Glenmede Trust Co. v. Thomspon, 56 F.3d 476, 486 (3d Cir. 1995); Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d. Cir. 1994).

attorney-client privilege as to that report and the underlying background to the preparation of the report has been waived." Id.  New Jersey's courts have also found a waiver or piercing of the attorney-client privilege through a broader analysis, namely, where the confidential communication has been placed "in issue" by the litigant. See Kinsella 150 N.J. at 300.

Generally, New Jersey courts have held that "[t]he typical setting in which the attorney-client privilege has not been sustained ... is where the party claiming the privilege has implicitly waived it by putting the confidential communications "in issue" in the litigation." Id. (citing In re Kozlov, 79 N.J. 232 (1979)). "[T]hree foundations must be established by the party seeking to pierce the privilege : (1) there must be a legitimate need for the evidence; (2) the evidence must be relevant and material to the issue before the court; and (3) by a fair preponderance of the evidence, the party must show that the information cannot be secured from any less intrusive source." In re Kozlov, 79 N.J. at 243-44.  The test has been construed as necessary to prevent "the inherent inequity" that would result if a party was permitted "to use the privilege as a sword rather than a shield." United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 567 (App. Div. 1984).

C. *Fahs Rolston's Motion to Compel*

Fahs Rolston claims that Ellenbogen and Blicher waived the attorney-client privilege by relying upon the advice of counsel when discussing decisions made from September through October 2000. Moving Brief at 1. The Court notes that even though Stark vigorously asserts that the communications between Blicher, Ellenbogen and Stark are privileged, the right to assert the attorney-client privilege lies with Pennington. See George, 182 F.R.D. at 138.  Pennington's Brief in its entirety fails to discuss Fahs Rolston's assertions that the attorney-client privilege was waived. Cf. In re Grand Jury, 603 F.2d at 474.  In fact, Pennington asserts that "what is best in this case is

for the Court to uncover the communications between counsel and the respective parties." Pennington Opposition at 8. While it appears that Pennington may be tacitly conceding that the privilege has been waived, Fahs Rolston's claims of waiver shall be analyzed within the proper legal framework.

The Court must therefore determine whether Fahs Rolston has a legitimate need for the evidence it seeks, whether the evidence is relevant and material to the issues and whether Fahs Rolston failed to secure the information from any less intrusive source. In re Kozlov, 79 N.J. at 243-44. Fahs Rolston seeks "all communications between [Blicher, Ellenbogen] and their attorneys relating to: (i) the notice of default; (ii) their right to terminate the contract with [Fahs Rolston]; (iii) their refusal to meet with [Fahs Rolston]; and (iv) the lawsuit that was filed against [Fahs Rolston] in the Superior Court of New Jersey." Reply Brief at 3. Fahs Rolston alleges that Ellenbogen and Blicher acted willfully, breached their fiduciary duties to Fahs Rolston, and that the information sought goes directly to this claim. Moving Brief at 2-3. When questioned during their depositions, Ellenbogen and Blicher asserted that their decisions were based upon the advice of their attorney. Moving Brief at Ex. A at 51:4-14, 52:19-53:17, Ex. B at 101:20-102:2, 103:2-14, 129:23-130:10, 107:20-108:6. Stark, however, contends that they "evaluated the facts ... and then rendered an opinion to Mr. Blicher and Mr. Ellenbogen" from which Blicher and Ellenbogen "made their own, now more informed, decision." Stark Opposition at 5. Pennington fails to make any argument regarding whether Blicher and Ellenbogen put the advice of counsel "in issue".

The Court finds that there is a legitimate need for the evidence, it is relevant and material to the issues, and it is not available from any less intrusive source. Fahs Rolston has established that the discovery sought will further the search for information surrounding the events between the parties from August through November 2000. This information may have a great impact on the

claims and defenses of the parties, and thus, there is a legitimate need for its production. The parties have virtually stipulated that the second prong of the Kozlov test, the relevancy and materiality of the information, is met. See Moving Brief at 2-3 (asserting that Ellenbogen and Blicher relied upon the advise of their attorneys when declaring default against Fahs Rolston); Stark Opposition at 5 ("Clearly, [Ellenbogen and Blicher] consulted defendant Haggerty for a legal opinion" which "was merely a basis for their decision to declare [Fahs Rolston] in default."); Pennington Opposition at 8 (arguing that the Court should "uncover the communications between counsel and the respective parties"). The Court also finds, nor do the parties contest, that the information is not available from any less intrusive source. Thus, all three prongs of the Kozlov test are met. Moreover, Ellenbogen and Blicher unequivocally admitted they relied upon the advice of counsel when making certain decisions that are the subject of this litigation. Accord In re PSE&G Shareholder Litig., 320 N.J. Super. 112. Accordingly, Fahs Rolston's informal motion to compel is GRANTED.

D. *Stark's Motion to Compel*

Stark and Pennington argue that Fahs Rolston has waived the attorney-client privilege by placing the advice of its counsel in issue. However, the Court finds that Stark and Pennington have not sufficiently shown how the advice of counsel was placed "in issue" by Fahs Rolston. Pennington broadly alleges that "plaintiff's principals have placed directly at issue the communications they had with their attorney Marc Citron" and that "the truth lies ... in the communications between Mr. Citron and his clients ... when they sought his counsel on how to get [out] of this deal." Pennington Opposition at 9-10. But, Pennington fails to specifically cite any deposition testimony or other discovery from Fahs Rolston that directly places the advice of counsel in issue.[2]

---

[2] The Court also notes that Fahs never objected to Defendants taking the deposition of Mr. Citron, in line with the Court's Orders. See February 3, 2006 Order and Opinion [Docket Entry No. 48] at p.7. Moreover, it is the Court's understanding that Mr. Citron has already been deposed.

9

Stark also fails to adequately establish that Fahs Rolston put the advice of its attorneys in issue. Stark cites the deposition of Carl Guy and asserts that "Guy's testimony is clear that his counsel's statement was wrong and he tried to correct the erroneous statement to resurrect the transaction." Stark Opposition at 7. However, the deposition transcript reveals that Guy did not agree with how a section of a letter was written by his counsel and he therefore sent a letter on his own. See Stark Opposition Ex. A at 22:11 - 27:15. The other sections of Guy's deposition cited by Stark include numerous objections based upon attorney client privilege. The fact that Fahs Rolston's counsel objected to a deposition question and asserted attorney-client privilege is not equivalent to Fahs Rolston putting the advice of their attorneys in issue. Therefore, the Court finds that Stark has also failed to show that Fahs Rolston has placed the advice of counsel in issue.

Because Pennington and Stark have failed to show that Fahs Rolston has placed the advice of counsel in issue, the Court does not need to weigh the three factors outlined in Kozlov. Therefore Pennington and Stark's Informal Motion to Compel is DENIED.

### III. CONCLUSION AND ORDER

For the aforementioned reasons and for good cause shown,

IT IS on this 27th day of December, 2006,

ORDERED that Fahs Rolston's Informal Motion to Compel is GRANTED; and it is further

ORDERED that Defendants Stark and Pennington's Informal Motion to Compel is DENIED.

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**