NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FAHS ROLSTON PAVING CORP.,** | **Civil Action No. 03-4593 (MLC)** |
| **Plaintiff,** | |
| v. | |
| **PENNINGTON PROPERTIES DEVELOPMENT CORP., INC., et al.,** | **MEMORANDUM OPINION** |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Defendants Pennington Properties Development Corp., Inc., Westrum Pennington, L.P., Peter Bleicher and Mark Ellenbogen's (the Pennington Defendants) motion to amend their Counterclaim in order to add a new count for breach of fiduciary duty. [Docket Entry No. 172]. Plaintiff opposes the Pennington Defendants' motion. The Court has fully reviewed the papers submitted in support of and in opposition to the Pennington Defendants' motion, and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth below, the Pennington Defendants' motion to amend is DENIED.

## I.    Background

On August 26, 2008, the Pennington Defendants filed a motion to amend their Counterclaim, which was ultimately denied without prejudice with leave to refile, pending a decision on the parties' then pending motions for summary judgment. On June 15, 2009, the motions for summary judgment were decided and on June 24, 2009, the instant motion was filed.

Through their motion, the Pennington Defendants seek leave to add a breach of fiduciary duty count to their Counterclaim.  Specifically, the Pennington Defendants seek to allege that Plaintiff, as a co-adventurer, breached its fiduciary duty to them when it failed to disclose that it was ready, willing and able to close on the Evans Tract and purchase parcel "C" as set forth in the Agreement of June 24, 1999 (the "Agreement").

The Pennington Defendants argue that their motion should be granted pursuant to the liberal standard for amendments set forth in FED.R.CIV.P. 15(a).  In this regard, the Pennington Defendants claim that Plaintiff will not be prejudiced by their proposed amendment because the breach of fiduciary duty counterclaim they seek to include "adds no new facts that the parties have not already addressed during discovery."  (Pennington Defs.' Br. at 8).  Instead, the Pennington Defendants claim that their motion "simply adds a new legal theory . . . to the facts as plead and developed in the course of discovery."  (Pennington Defs.' Reply Br. at 2).  As such, the Pennington Defendants claim that "[t]here is no discovery needed to explore the legal theory upon which [they] seek to proceed and thus there is no identifiable prejudice to substantiate a denial of the amendment."  (Pennington Defs.' Supp. Br. at 1-2).

Further, the Pennington Defendants argue that Plaintiff will not be prejudiced by its alleged lack of opportunity to file a dispositive motion on the Pennington Defendants' proposed breach of fiduciary duty counterclaim.  In this regard, the Pennington Defendants claim that "[a]s a matter of substantive law," their proposed amendment "passes muster as it is based on the same legal principles that plaintiff bases its fiduciary duty claims upon which have withstood summary judgment challenge."  (Pennington Defs.' Br. at 8).  Thus, the Pennington Defendants argue that Plaintiff's contention that it will be deprived of the opportunity to file a dispositive motion is

"specious" because "[s]urely, if defendants lost their respective motions for summary judgment on their breach of fiduciary duty claims, as they did, then plaintiff will as well." (Pennington Defs.' Reply Br. at 2). In addition, the Pennington Defendants state that "[i]f plaintiff honestly thinks it can prevail before this Court on a Motion for Summary Judgment, then defendants have no objection to putting off the trial for a month or two to allow the Motion." (Pennington Defs.' Supp. Br. at 2).

The Pennington Defendants also contend that their proposed amendment should be granted under Rule 15 because it is not the product of undue delay or bad faith. The Pennington Defendants argue that on May 19, 2008, Defendant Westrum Pennington LP filed a motion for summary judgment in which it sought dismissal of Plaintiff's claims for breach of fiduciary duty by arguing that "the joint venture for the land use application had terminated in September 2000 when plaintiff informed the Pennington Properties Defendants that it could not go forward with its obligations under the property sale Agreement." (Pennington Defs.' Br. at 9-10). The Pennington Defendants note that on August 5, 2008, the District Court denied Defendant Westrum Pennington LP's motion for summary judgment, finding that "genuine issues of material fact as to when the joint venture was terminated if at all were to be decided by a jury." (*Id*. at 10). The Pennington Defendants claim that on August 26, 2008, three weeks after the District Court made this determination, they filed a motion to amend to add a breach of fiduciary duty claim against Plaintiff.[1]

---

[1]As previously stated, the Pennington Defendants' initial motion to amend their counterclaim to add a breach of fiduciary claim was denied without prejudice with the right to refile pending certain dispositive motion practice. The instant motion to amend is the Pennington Defendants' refiled motion.

The Pennington Defendants claim that they did not unduly delay in seeking to add a breach of fiduciary duty counterclaim by waiting until August 26, 2008 to file their motion to amend.  Similarly, the Pennington Defendants claim that their decision to wait until August 26, 2008 to file their motion to amend was not the product of bad faith.  Indeed, the Pennington Defendants argue that throughout the course of this litigation they have maintained that "when the parties' relationship became adversarial in September 2000, any fiduciary relationship that emanated from the joint venture ceased and so too any fiduciary obligations to one another." (*Id*.)  Thus, the Pennington Defendants claim that in order to have proceeded with a breach of fiduciary duty claim at an earlier date, they would have been "forced to adopt a disingenuous position that was *factually* at war with the claims and defenses upon which they had consistently relied."  (*Id*. at 10-11 (emphasis in original).  Consequently, the Pennington Defendants argue that their "motives were pure:" they simply wanted to "pursue claims, defenses and theories that were factually consistent and did not run afoul of the Federal Rules of Civil Procedure."  (*Id*. at 11).

In this regard, the Pennington Defendants argue that "Fed.R.Civ.P. 8 does not grant a party 'license to plead inconsistent *assertions of facts* within allegations that serve as the factual predicates for an independent, unitary claim.'" (*Id*. at 11 (quoting *In re Livent, Inc. Noteholders Sec. Litig*., 151 F.Supp.2d 371, 407 (S.D.N.Y. 2001).  As a result, the Pennington Defendants claim that "[u]ntil this Court invited Defendants' [sic] to pursue a breach of fiduciary duty claim when it only recently ruled on June 16, 2009 that there were material issues of fact regarding when the joint venture terminated, Defendants did not believe it appropriate to assert competing factual allegations to support separate counts of breach of contract and breach of fiduciary duty."

(*Id*.).  In addition, prior to the District Court's determination of the dispositive motions, the

Pennington Defendants, argue that based on the Third Circuit's decision in *Ryan Operations G.P.*

*v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996), they believed that Plaintiff

"would argue that Defendants are judicially estopped from asserting inconsistent positions in the

same proceeding."  (*Id*.)  As such, the Pennington Defendants argue that they neither unduly

delayed in filing the instant motion, nor did they wait to file the instant motion out of bad faith.

Instead, the Pennington Defendants claim that they "have always proceeded with the utmost

caution and with candor to the tribunal full well knowing that motion practice should distill the

issues surrounding the breach of contract/breach of fiduciary duty debate and allow them to fall

back on the liberality with which a party may amend a pleading."  (*Id*. at 11-2).  Further, the

Pennington Defendants note that delay without more is an insufficient basis for denying a motion

to amend.

In addition, the Pennington Defendants argue that their motion to amend should be

granted because their proposed amendment is not futile.  The Pennington Defendants contend

that their breach of fiduciary duty claim is not time barred for two reasons.  First, they argue that

their proposed breach of fiduciary duty claim is "governed by New Jersey's six year staute of

limitations and applicable discovery rule."  (*Id*. at 8).  The Pennington Defendants claim that they

did not learn of the facts that support their breach of fiduciary duty claim until April 12, 2005

when Marc Citron testified that Plaintiff "was ready, willing, and able to proceed with its

obligations under the Agreement."  (*Id*. at 2).  Thus, the Pennington Defendants argue that

"plaintiff's contention that the breach of fiduciary duty claim accrued in the Fall of 2000 misses

the point entirely" because Plaintiff "never communicated orally or in writing, directly or

5

indirectly through its agents, that it was ready, willing and able to close on the Evans tract."
(Pennington Defs.' Reply Br. at 3).  Indeed, the Pennington Defendants argue that Plaintiff
concedes that it never communicated this fact to them.  As a result, the Pennington Defendants
argue that their proposed breach of fiduciary duty claim is timely under the applicable statute of
limitations.

Second, the Pennington Defendants argue that their claim is not time barred because it is
"timely under the [sic] Rule 15(c)'s relation back doctrine[.]" (Pennington Defs.' Br. at 9).
Specifically, the Pennington Defendants argue that its breach of fiduciary duty claim relates back
under Rule 15(c) because it "asserts a claim or defense that arose out of the conduct, transaction,
or occurrence set out - or attempted to be set out in Plaintiff's breach of contract claim, as well as
most of plaintiff's claims as well."  (*Id*.).

Plaintiff opposes the Pennington Defendants' motion to amend arguing that (1) Plaintiff
would be unduly prejudiced by the proposed amendment; (2) the proposed amendment is the
product of undue delay and bad faith motives; and (3) the proposed amendment is futile. With
respect to prejudice, Plaintiff argues that it would be unfairly disadvantaged if the Pennington
Defendants were permitted to add the breach of fiduciary duty counterclaim at this stage of
proceedings because "Plaintiff will be precluded from seeking any discovery on this claim" and
because plaintiff "will be prevented from moving for summary judgment as to this claim and will
be forced to defend against it at trial without the benefit of ***any*** information."  (Pl.'s Opp'n Br. at
4 (emphasis in original)).  In this regard, Plaintiff claims that "[i]f the motion to amend were
granted, Plaintiff would seek to re-depose Peter Blicher, Mark Ellenbogen and Daniel Haggerty
regarding Defendants' newly minted breach of fiduciary duty claims.  (Pl.'s Supp. Br. at 2)

Plaintiff also argues that it "would then seek an opportunity to move for summary judgment on Defendants' new claims." (*Id*.) Plaintiff contends that while the depositions could be completed in a few days, the summary judgment motion would likely "set this case back several months." (*Id*.)

In addition, Plaintiff claims that "[t]he fact that Defendants belatedly seek to add a tort claim and seek punitive damages on the eve of filing the Final Pre-Trial Order only compounds the undue prejudice Plaintiff would suffer if this motion were granted." (Pl.'s Opp'n Br. at 4). Further, Plaintiff argues that the Pennington Defendants' motion "flies in the face of numerous representations made by Defendants' counsel" that this is a "simple breach of contract case." (*Id*. at 5 (internal quotation marks omitted)). Indeed, Plaintiffs note that defense counsel would "make such statements during depositions in an attempt to limit the line of questioning directed to her clients." (*Id*.)

With respect to undue delay and bad faith motives, Plaintiff argues that the focus is on "the movant's reasons for not amending sooner." (*Id*. at 5). Here, Plaintiff argues that that "[t]here is no reasonable explanation" for the Pennington Defendants' failure to include their breach of fiduciary duty claim in their original Counterclaim as the factual basis underlying their proposed breach of fiduciary duty counterclaim, namely that Plaintiff failed to advise them that it was ready, willing and able to proceed with its obligations under the Agreement, was "by no means just discovered by Defendants." (*Id*. at 6). Instead, Plaintiff claims that "the existence of the joint venture was determined by Special Master Keefe in 2001" and the Pennington Defendants could have chosen to set forth "[a]ny alleged omissions related to that joint venture relationship" at any time during the course of this litigation. (*Id*.) At a minimum, Plaintiff

contends that the Pennington Defendants could and should have "asserted a breach of fiduciary claim . . . following Mr. Citron's deposition in April of 2005." (*Id.*)

Plaintiff argues that the Pennington Defendants' explanation for the delay, i.e. that it would have been inappropriate for them to take inconsistent positions in this litigation and that they consequently waited "until there was a finding by the Court that the fiduciary relationship extended beyond September 14, 2000" to seek to assert the breach of fiduciary duty claim, "is specious, at best." (*Id.*) Indeed, Plaintiff claims that the Pennington Defendants' explanation is "incomprehensible" as "***parties routinely assert claims in the alternative***" and if the Pennington Defendants' explanation is taken "to its logical conclusion" then parties in every case would be allowed "to wait until after summary judgment motions are decided before moving to amend." (*Id.* (emphasis in original)).

Further, Plaintiff argues that the Pennington Defendants' motion to amend is brought in bad faith because it is similar to a motion to amend filed over two and a half years ago by Defendants Stark & Stark and Daniel Haggerty (the "Stark Defendants"), which "was summarily rejected by the Court." (*Id.*) Plaintiff notes that the Stark Defendants' allegedly waited until January 2007 to file their motion to amend because they did not learn of the factual basis supporting their proposed amendments for indemnification and contribution until July 2006 and that given the August deadline for filing summary judgment motions, it made sense to wait to file their motion to amend. Plaintiff argues that the Court rejected the Stark Defendants' motion to amend, finding that the nature of the Stark Defendants' attempt to make the proposed amendments demonstrated "'bad faith in and of itself, and the delay in filing the motion [wa]s indicative of its true intent.'" (*Id.* at 7 (quoting 8/14/07 Op. at 17)). Plaintiff claims that the

8

instant motion is worse because it was filed "two and a half years **after** the Stark Defendants' belated motion."  (*Id*. (emphasis in original)).

Plaintiff also argues that the Pennington Defendants' motion to amend should be denied because their proposed amendment is futile.  In this regard, Plaintiff claims that the Pennington Defendants' proposed breach of fiduciary duty claim is barred by the applicable six year statute of limitations.  Plaintiff argues that the facts giving rise to the Pennington Defendants' proposed amendment occurred over eight years ago.  Further, Plaintiff claims that, despite their arguments to the contrary, the Pennington Defendants could have discovered that Plaintiff was ready, willing and able to proceed with the Agreement before Mr. Cintron's deposition in April 2005.  Indeed, Plaintiff argues that "had Defendants bothered to respond to any of Plaintiff's numerous requests for a meeting in October and November of 2000 they would have discovered Plaintiff's desire to move forward."  (*Id*. at 8).

Similarly, Plaintiff argues that Rule 15(c) does not save the Pennington Defendants' proposed breach of fiduciary duty counterclaim from being untimely.  Plaintiff contends that the Pennington Defendants cannot satisfy any of the relation back requirements of Rule 15(c).  Plaintiff argues that relation back under Rule 15(c)(1)(A) is inapplicable because that subsection permits relation back when "the law that provides the applicable statute of limitations allows relation back" and "New Jersey . . . does not provide a more forgiving principle of relation back than does federal practice."  (Pl.'s Opp'n Br. at 9).  Further, Plaintiff argues that Rule 15(c)(1)(B) is inapplicable because that subsection permits relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading."  Plaintiffs argue that the Pennington Defendants' "breach of

fiduciary duty counterclaim is neither based upon the general fact situation nor legal theory included in their breach of contract counterclaim." (Pl.'s Opp'n Br. at 9). Instead, Plaintiff claims that the Pennington Defendants' proposed amendment is completely add odds with defense counsel's previous characterizations of this case as a "simple breach of contract case[.]" (*Id*. at 9-10 (internal quotation marks omitted)). Plaintiff argues that not once during the past six years of litigation have the Pennington Defendants alleged a breach of fiduciary duty claim against Plaintiff. As such, Plaintiff contends that the Pennington Defendants' proposed amendment, which not only includes "facts that in no way relate to the[] original counterlcaim, but . . . also includes a request for punitive damages[,] . . . does not relate back to the original counterclaim under Rule 15(c)(2)." (*Id*. at 10).

In addition, Plaintiff argues that Rule 15(c)(1)(C) is inapplicable here. Plaintiff notes that Rule 15(c)(1)(C) permits relation back under limited circumstances, specifically where "the amendment changes the party or the naming of the party against whom a claim is asserted" and this circumstance is not presented here.

**II.    Analysis**

Pursuant to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of

10

undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment."  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify denying a motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . .  'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). In examining whether the movant's delay is undue, the Court looks at the moving party's reasons for not amending sooner.  *Lyon v. Goldstein*, Civil Action No. 04-3458 (MLC), 2006 WL 2352595, at *4 (D.N.J. Aug. 15, 2006).  The same holds true in the Court's examination of bad faith.  *Id*.

Further, a proposed amendment is appropriately denied where it is futile.  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (Internal quotation marks and citations omitted).  In determining whether an amendment is "insufficient

11

on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard.  *See Alvin*, 227

F.3d at 121.  Under Rule 12(b)(6), a motion to dismiss will be granted if the plaintiff fails to

articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  When determining

whether a claim should be dismissed under Rule 12(b)(6), the factual allegations set forth in the

pleading must be accepted as true and viewed in the light most favorable to the party asserting

them.  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).

   Under the circumstances of this case, the Court finds that the interests of justice weigh

against permitting the Pennington Defendants' proposed breach of fiduciary duty counterclaim.

While the Pennington Defendants are correct that leave to amend the pleadings is generally freely

given, there are limits to the Court's leniency.  Here, the Pennington Defendants' motion to

amend must be denied because their proposed breach of fiduciary duty counterclaim would both

prejudice the Plaintiff and would place an unwarranted burden on the Court.

   The Court examines the timeliness of the Pennington Defendants' motion as well as its

prejudicial effect based on the date they initially moved to amend to add a breach of fiduciary

duty counterclaim:  August 26, 2008.  While a trial date had not been set at that time, fact

discovery was essentially complete, expert discovery was near its conclusion and a schedule for

filing a second round of dispositive motions had been set.  (*See* 7/14/08 Ltr. Order; 8/25/08 Ltr.

Order).  If the Pennington Defendants' motion to amend is granted, then the Court would either

have to reopen discovery and likely set another briefing schedule for Plaintiff's anticipated

summary judgment motion on the proposed breach of fiduciary duty counterclaim or preclude

Plaintiff from engaging in any discovery on the proposed claim as well as from filing a summary

12

judgment motion.  While the Court appreciates the Pennington Defendants' argument that no additional discovery is needed on their proposed breach of fiduciary duty counterclaim, the Court disagrees.  Plaintiff has identified three individuals that it would seek to redepose if the counterclaim were allowed and the Court finds Plaintiff's point compelling.  While it may appear that the three individuals identified by Plaintiff have been deposed *ad nauseum*, Plaintiff did not have the opportunity to obtain their testimony with the proposed breach of fiduciary duty counterclaim in mind.  The proposed counterclaim differs significantly from the breach of contract claims initially set forth by the Pennington Defendants and the Court finds that Plaintiff would be unduly prejudiced if it were not given the opportunity to conduct some discovery with that counterclaim in mind.

Similarly, the Court finds that Plaintiff would be prejudiced even if the Court were to reopen discovery so that it could depose the three identified individuals and were to permit the filing of a summary judgment motion on the Pennington Defendants' proposed breach of fiduciary duty counterclaim.  In this regard, while the Court disagrees with Plaintiff that reopening discovery and permitting the filing of another dispositive motion would result in a several month delay of this matter, the Court finds that the case would be set back two to three months, which at this stage of proceedings is a significant delay and which in August 2008 also represented a meaningful delay.  In addition, coupled with delay is the fact that Plaintiff has litigated this case since 2003 under the belief that the Pennington Defendants were only pursuing breach of contract claims.  As already noted, the Pennington Defendants' proposed breach of fiduciary duty counterclaim with its request for punitive damages is significantly different from their initial breach of contract claims.  Had the proposed counterclaim been added to this case in

13

2005, Plaintiff certainly would have altered its litigation strategy to address same.  To force Plaintiff to make this adjustment three years[2] after even the Pennington Defendants admit they learned of the facts underlying their proposed breach of fiduciary duty counterclaim would be prejudicial in light of the fact that the Pennington Defendants' reasons for not seeking to amend sooner are not credible.

In this regard, the Pennington Defendants claim that they did not seek to add their proposed breach of fiduciary duty counterclaim earlier because they have always maintained that any fiduciary relationship from the joint venture ended in September 2000 and, consequently, the Pennington Defendants wanted to avoid presenting "a disingenuous position that was *factually* at war with the claim and defenses upon which they had relied" because Rule 8 "does not grant a party 'license to plead inconsistent *assertions of facts* within allegations that serve as the factual predicates for an independent, unitary claim.'" (Pennington Defs.' Br. at 11 (quoting *In re Livent*, 151 F.Supp.2d at 407)).  Further, the Pennington Defendants claim that they didn't seek to amend their counterclaim prior to the District Court's summary judgment decision because they believed that Plaintiff would argue that they were "judicially estopped from asserting inconsistent positions in the same proceeding."  (*Id.*)  The Pennington Defendants, thus, claim that they waited until after the District Court's summary judgment decision because they did not want to "to talk out of 2 sides of their mouth" and because they did not want to be accused of "'playing fast and loose' with the judicial system."  (*Id.* (quoting *Ryan Operations*, 81 F.2d at 358) (internal quotation marks and citation omitted)).

---

[2]Again, in examining the prejudicial effects of the instant motion to amend and whether it resulted from undue delay, the Court uses the August 26, 2008 filing date of the Pennington Defendants' initial motion.

The Pennington Defendants' alleged reasons for not amending sooner, however, are unconvincing because Rule 8 specifically permits alternate and inconsistent pleadings. Indeed, Rule 8(d)(2) states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Further, Rule 8(d)(3) states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." The Pennington Defendants' proposed breach of fiduciary duty counterclaim is exactly the type of alternate claim contemplated by Rule 8(d). The Pennington Defendants would neither have been talking out of both sides of their mouth nor would they have been "playing fast and lose" with this Court had they asserted their proposed breach of fiduciary duty counterclaim prior to the District Court's determination that genuine issues of material facts exist regarding when, if ever, the parties' joint venture was terminated.

The Court finds the Pennington Defendants suggestion that their proposed breach of fiduciary duty counterclaim would have been inappropriate based on the Southern District of New York's determination in *In re Livent* to be flawed. This matter is completely distinguishable from the *In re Livent* matter in which the Southern District took issue with Plaintiffs' inconsistent and "internally self-contradictory" allegations of fraud, which according to Rule 9(b) had to be stated with particularity. 151 F.Supp.2d at 407.

The Court is similarly unpersuaded by the Pennington Defendants' judicial estoppel argument. Judicial estoppel "is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations*, 81 F.3d at 358. Judicial estoppel "is not intended to

15

eliminate all inconsistencies, . . . rather it is designed to prevent litigants from 'playing fast and

loose with the courts.'" *Id.* (quoting *Scarano v. Cent. R.R. Co. of New Jersey*, 203 F.2d 510, 513

(3d Cir. 1953) (citation omitted)).  Thus, in order for judicial estoppel to apply, (1) the party's

present position must be inconsistent with a position formerly asserted; and (2) the party must

have asserted one or more of the inconsistent positions in bad faith, i.e., "with intent to play 'fast

and loose with the court.'"  *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense

Bd.*, 948 F.Supp. 400, (D.N.J. 1996) (quoting *Ryan Operations*, 81 F.3d at 358 (internal

quotation marks and citation omitted)).

      Here, the Pennington Defendants would not have been acting in bad faith had they

attempted to assert their proposed breach of fiduciary duty counterclaim before the District

Court's determination that genuine issues of material facts exist regarding when, if ever, the

parties' joint venture terminated because Rule 8 specifically authorizes alternative, hypothetical

and/or inconsistent pleadings.  Indeed, the doctrine of judicial estoppel is not applicable to

pleadings framed in the alternative or hypothetical manner; nor does it bar separate, yet

inconsistent, claims or defenses.  Rule 8(d)(2) & (3); *see Barr v. Dramatists Guild, Inc.*, 573

F.Supp., 555, 560 (S.D.N.Y. 1983) (finding that "[j]udicial estoppel is not applicable because

pleadings framed in an alternative or hypothetical manner do not involve a change of position).

Instead, Rule 8(d) permits alternative pleadings precisely so that a party need not place all of its

eggs in one basket.  The Southern District's decision in *Aiena v. Olsen* explains this perfectly:

> Given the uncertainties concerning (a) whether the J & H
> arrangements were an ERISA plan and (b) the scope of ERISA
> preemption, it would be foolish to put all of one's eggs in either the
> ERISA or the state law basket.  Resting solely on ERISA would
> run the risk that a court ultimately would determine that there was

> no ERISA plan.  Resting solely on the state law theory would run
> the risk that a court would conclude that there was an ERISA plan
> and that the state claims were preempted.
>
> Rule 8(e)(2) permits such alternative pleading to avoid
> precisely such dilemmas.  Plaintiffs at this early state are not bound
> for purposes of their state law claims by their alternative allegation
> that there was an ERISA plan.  Nor are they judicially estopped to
> deny their ERISA allegation, as that doctrine applies only if the
> party against which it is asserted has obtained relief on the basis of
> the allegation that it seeks to disavow.

69 F.Supp.2d 521, 531 (S.D.N.Y. 1999).  Thus, there is no reasonable explanation for the

Pennington Defendants' failure to assert their proposed breach of fiduciary duty counterclaim in

2005 when they learned of the facts supporting that claim.  Given the lack of a reasonable

explanation for the delay, the Court finds that the prejudice that would be suffered by Plaintiff if

the Pennington Defendants' motion were granted warrants the denial of same.[3]

The Court similarly finds that the Pennington Defendants' motion to amend should be

denied because their delay in filing same places "an unwarranted burden on the court."  *Adams,*

739 F.2d at 868.  The Court reaches this conclusion in large part based on the lack of a credible

explanation for the Pennington Defendants' delay.  The Court has an obligation to ensure "the

just, speedy, and inexpensive determination of every action and proceeding."  FED.R.CIV.P. 1.

To allow the amendment sought by the Pennington Defendants at this late date,[4] when they (1)

knew of the factual basis underlying their proposed breach of fiduciary duty counterclaim in

---

[3]This determination is in no way based upon the Court's previous denial of the Stark
Defendants' motion to amend.  That motion involved completely different issues and the Court
finds that it has no bearing on the Pennington Defendants' motion.

[4]The "late date" referenced by the Court is August 26, 2008, the date on which the
Pennington Defendants initially moved to add a breach of fiduciary duty counterclaim against
Plaintiff.

17

2005; and (2) have no reasonable explanation for their delay, would eviscerate the entire purpose of Rule 1.  As set forth above, Rule 8(d) specifically authorizes alternative, hypothetical and inconsistent pleadings.  Allowing parties to ignore their ability to plead in the alternative or present all claims and defenses, regardless of consistency, and to wait until the conclusion of dispositive motion practice to amend their pleadings in order to add alternative claims and defenses would be highly inefficient and would seriously undermine the Court's efforts to preserve judicial economy and effectively manage cases.  As such, the Court finds that the Pennington Defendants' unduly delayed in seeking to amend their counterclaim.  This undue delay warrants the denial of their motion.[5]

## III.    Conclusion

For the reasons stated above, the Pennington Defendants' motion to amend is DENIED. An appropriate Order follows.


Dated:  November 2, 2009

                                                  s/Tonianne J. Bongiovanni
                                                  **HONORABLE TONIANNE J. BONGIOVANNI**
                                                  **UNITED STATES MAGISTRATE JUDGE**

_____

[5]Because the Court finds that the Pennington Defendants' motion to amend should be denied on the grounds of undue prejudice and undue delay, the Court does not reach the parties' futility arguments.